1   Tara J. Schleicher, OSB #95402
    TSchleicher@farleighwitt.com
2   Peter C. McKittrick, OSB #85281
    PMcKittrick@farleighwitt.com
3   Farleigh Witt
    121 SW Morrison Street, Suite 600
4   Portland, Oregon 97204-3136
    Telephone: (503) 228-6044
5   Facsimile:  (503) 228-1741

6        Attorneys for Debtor

7

8

9            IN THE UNITED STATES BANKRUPTCY COURT

10              FOR THE DISTRICT OF OREGON

11  In re

12  Carolina Tobacco Company,                    Case No. 05-34156-elp11

13          Debtor.                              CAROLINA TOBACCO COMPANY'S
                                                 RESPONSE TO EMERGENCY
14                                               MOTION OF SETTLING STATES TO
                                                 ENFORCE DEBTOR'S THIRD
15                                               AMENDED PLAN OF
                                                 REORGANIZATION DATED
16                                               OCTOBER 18, 2005 (AS MODIFIED
                                                 FEBRUARY 24, 2006)
17

18
            Carolina Tobacco Company, the reorganized Debtor in the above-captioned
19
    bankruptcy proceeding ("CTC"),  hereby responds to the Settling States' Emergency Motion to
20
    Enforce Debtor's Third Amended Plan Dated October 18, 2005 (as Modified February 24, 2006)
21
    (the "Motion").  While CTC is willing to segregate additional funds for the ultimate payment of
22
    escrow deposits for 2006 sales, CTC has not violated the Plan and the Settling States' Motion
23
    should be denied.
24
            **Background Facts**
25
            The Plan requires that the Debtor "segregate the amounts necessary to pay all
26
    NPM escrow obligations by the 15th day of each month for the previous month's sales."  (Plan,

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   Article 6.09(h)).   This Plan requirement is one that is not imposed upon non-participating

2   manufacturers ("NPM's") under state law.   Rather, state law requires NPMs to make deposits for

3   the previous calendar year's sales by April 15th of the following year.   An NPM is not required to

4   segregate sums that will ultimately be required for such deposits on  a monthly basis.

5       Escrow deposits are calculated by using the following formula: *number of*

6   *cigarettes sold during period x NPM Base Rate x Inflation Adjustment Rate*.   (Jennifer Li

7   Declaration ¶ 2). The schedule of NPM Base Rates is set forth in Exhibit T of the MSA (the

8   model escrow statute, which all of the relevant states have adopted). *Id.* The NPM Base Rate

9   varies from year to year but is set forth in the model escrow statute. *Id.*

10      However, the Inflation Adjustment Rate is unknown during the year in which the

11  sales are generated. *Id* at ¶ 3.  Price Waterhouse Coopers ("PWC") is the independent auditor for

12  the MSA. *Id.*   PWC sets the inflation adjustment in approximately March or early April each

13  year for the previous sales year. *Id.* Throughout the sales year, parties can only speculate as to

14  what the Inflation Adjustment Rate will ultimately be because PWC does not determine the

15  actual Inflation Adjustment Rate until months after that calendar year is over. *Id.*

16      The product of the NPM Base Rate and the Inflation Adjustment Rate equals the

17  accrual rate that CTC uses to calculate the escrow deposits due for a given sales year (the "NPM

18  Fee Rate"). *Id.* at ¶ 4.  When the Plan was formulated, including the projections attached to the

19  Plan as Exhibit 3, CTC had to estimate what the Inflation Adjustment Rate would be to calculate

20  the NPM Fee Rate for escrow deposits. *Id.*  Those rates were simply that, estimates.

21      At the time the Plan was formulated and confirmed, the Inflation Adjustment Rate

22  had not yet been set by PWC for the 2005 sales year. *Id.* at ¶ 5. Ultimately, PWC, post-

23  confirmation, determined that the actual 2005 Inflation Adjustment Rate was 1.2425497.  The

24  NPM Base Rate for 2005 was $0.0167539 per cigarette. *Id.* The product of the two is

25  $0.02081755. *Id.*  Accordingly, while CTC had estimated in the projections that the NPM Fee

26  Rate per cigarette sold was going to be $0.0212 for the sales year 2005 the actual rate was

**Page 2 of 5 -** CAROLINA TOBACCO COMPANY'S RESPONSE TO EMERGENCY
MOTION OF SETTLING STATES TO ENFORCE DEBTOR'S THIRD AMENDED PLAN
OF REORGANIZATION DATED  OCTOBER 18, 2005 (AS MODIFIED FEBRUARY 24,
2006) H:\Client\Ctc\71525\Response to Emergency Motion.doc

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    $0.02081755, a lower NPM Fee Rate per cigarette than CTC had projected. *Id.*

2    Historically and consistent with the MSA and Qualifying Statute, CTC has not

3    had to segregate amounts monthly for escrow deposits to be made in the following year. *Id.* at ¶

4    6. However, CTC has had to make quarterly escrow deposits to fifteen states that require

5    deposits be made quarterly in a given sales year. *Id.* With the quarterly states, and depending on

6    the state at issue, escrow deposits and certifications are due between fifteen days to forty-five

7    days after the end of the quarter. *Id.* CTC sends a letter to each quarterly state requesting that the

8    quarterly state provide the total number of CTC cigarettes reported as sold during the previous

9    quarter. *Id.* "Sales" are typically the number of cigarettes that have been stamped with the state's

10    tax stamp for sale in that state. *Id.* This information comes from distributor's and stamping

11    agent's reports to the states regarding the total number of tax stamps applied to cigarette packs

12    during a quarter. *Id.* Responses from the quarterly states are varied. *Id.* Some states provide the

13    information, while often times, others do not have complete information when the escrow

14    deposits are due for that quarter. *Id.* In those cases, CTC makes a best determination for that

15    state's quarterly escrow deposit. *Id.* Once the quarterly state has the final figure, it will inform

16    CTC of the total number of cigarettes and whether CTC over or under deposited for the quarter.

17    *Id.* Under deposits are made up promptly after notification from the state, and over deposits are

18    applied to the next quarterly deposit. *Id.*

19    The majority of the fifteen states that require quarterly deposits have compliance

20    certification forms that CTC completes whenever a quarterly escrow deposit is due. *Id.* at ¶ 7.

21    Forms and procedures are not standardized state by state, though some states may use a similar

22    form. *Id.* The compliance form used by some states listed an estimated $0.02144 rate for 2006

23    sales on their compliance forms. *Id.* CTC used this rate to calculate its quarterly escrow deposits

24    for all states, except as set forth below for the states of California (for first quarter) and

25    Washington. *Id.*

26    California's compliance form simply states that the escrow deposit must be

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  adjusted for inflation, but does not specifically list a figure to use for inflation. *Id.* at ¶8.  In a

2  letter dated August 24, 2006, California confirmed that it would use the estimated $0.02144 rate

3  for its quarterly 2006 escrow deposits.  *Id.*  In that letter, California requested that CTC deposit

4  an additional approximately $5,000 for the Inflation Adjustment Rate for the first quarter. *Id.*

5  CTC complied with that request. *Id.*  Washington does not require quarterly escrow deposits to

6  reflect an inflation adjustment and instead expects that the inflation adjustment be deposited with

7  CTC's escrow deposits in April, 2007 for 2006 sales.  *Id.*

8          From CTC's experience in dealing with the quarterly states, many quarterly states

9  seem to view the quarterly escrow deposits as a good faith effort to comply with the law. *Id.* at ¶

10  9.  Sales figures are often inaccurate or incomplete, on either the state or the manufacturer's side.

11  *Id.*  Many states realize this and are amenable to the manufacturer making up the difference after

12  the quarterly deposits have been made or even in the following April 15 deposit. *Id.*

13          Given that CTC has never segregated monthly deposits for the states that require

14  payment only after the sale year at issue, prior to being required to do so during the bankruptcy,

15  CTC used the NPM Base Rate for 2005 and 2006 of  $0.0167539 per cigarette and the NPM Fee

16  Rate of $0.02081755 (based on the 2005 Inflation Adjustment Rate). *Id.* at ¶ 10.   In

17  approximately September 2006, CTC hired Edward Hostman, Inc. ("EHI") to carry out financial

18  analyses. *Id.*  Based upon EHI's work, CTC adjusted the NPM Fee Rate for its monthly deposits

19  into the segregated accounts to $0.02144 which is the rate given to CTC by the quarterly states as

20  referenced above. *Id.*

21          **Relief Requested by States Should be Denied**

22          The Settling States point to Article 6.09(a) of the Plan as requiring that the Debtor

23  must segregate monthly using an NPM Fee Rate listed on page 19 of Exhibit 3 to the Plan.

24  However, Exhibit 3 to the Plan prepared by EHI was a set of **projections**.  As proven by the

25  PWC Inflation Adjustment Rate established by 2005, the NPM Fee Rate per cigarette sold for the

26  year 2005 projected by EHI was high.   Article 6.09(a) of the Plan simply requires that the

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1 "Debtor shall make every reasonable effort to operate and expend funds in accordance with the

2 projections in Exhibit 3."  It does not require the Debtor to use NPM Fee Rates that are inflated

3 or that are different from those estimates made by the States themselves.

4      What the Settling States request is that the Court require the Debtor to use an

5 NPM Fee Rate that is likely inflated and is different from and higher than the rate that the States

6 themselves estimate will ultimately be established by PWC.  That is not "reasonable."  As a

7 result, CTC's segregation of monthly deposits at the NPM Fee Rate estimated by the quarterly

8 states is appropriate and is in compliance with the Plan.

9      CTC is willing to segregate additional amounts necessary to make up the

10 difference between the fees segregated using the 2005 NPM Fee Rate ($0.02081755) and the

11 2006  NPM Fee Rate estimated by the States ($0.02144) for the time period prior to September

12 2006.  In fact, CTC has projected such a make-up payment in January of 2007, which totals

13 $267,497.04.[1]

14      Dated: January 5, 2007.

15

16      FARLEIGH WITT

17

18      By:/s/ Tara J. Schleicher
          Tara J. Schleicher, OSB #95402

19          (503) 228-6044
          TSchleicher@farleighwitt.com

20          Of Attorneys for Debtor Carolina Tobacco
          Company

21

22

23

24
_____

25 [1] This amount is composed of $202,405.20 (the cases sold as previously reported to the States
times the NPM Fee Rate given to CTC by the States of $0.02144) plus $65,091.84 for deposits

26 on 253 cases erroneously omitted from the previous report, but disclosed to the States in
response to Interrogatories in Adversary Proceeding No. 06-3336-elp.

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Tara J. Schleicher, OSB #95402
     TSchleicher@farleighwitt.com
2    Peter C. McKittrick, OSB #85281
     PMcKittrick@farleighwitt.com
3    Farleigh Witt
     121 SW Morrison Street, Suite 600
4    Portland, Oregon 97204-3136
     Telephone: (503) 228-6044
5    Facsimile:  (503) 228-1741

6            Attorneys for Debtor

7

8

9                IN THE UNITED STATES BANKRUPTCY COURT

10                    FOR THE DISTRICT OF OREGON

11   In re

12   Carolina Tobacco Company,                Case No. 05-34156-elp11

13            Debtor.                          DECLARATION OF JENNIFER LI IN
                                               SUPPORT OF CAROLINA TOBACCO
14                                             COMPANY'S RESPONSE TO
                                               EMERGENCY MOTION OF SETTLING
15                                             STATES TO ENFORCE DEBTOR'S
                                               THIRD AMENDED PLAN OF
16                                             REORGANIZATION DATED
                                               OCTOBER 18, 2005 (AS MODIFIED
17                                             FEBRUARY 24, 2006)

18

19            I, Jennifer Li, make this declaration and declare under penalty of perjury as

20   follows:

21            1.      I am employed by Carolina Tobacco Company, the reorganized Debtor in

22   the above captioned bankruptcy proceeding ("CTC") as the Vice President of Legal and

23   Regulatory Affairs.  I am responsible for, among other things, interacting with the Settling States

24   regarding statutory compliance matters.  I am competent to testify in Oregon courts and make the

25   following statements based on my own personal knowledge and in support of CTC's response to

26   the Settling States' Emergency Motion to Enforce Debtor's Third Amended Plan Dated October

***FARLEIGH WITT***
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    18, 2005 (as Modified February 24, 2006) (the "Motion").

2        2.    CTC calculates the amount necessary to make its escrow deposits by using

3    the following formula: *number of cigarettes sold during period x NPM base rate x inflation*

4    *adjustment rate*.  The schedule of NPM base rates is set forth in Exhibit T of the MSA (the

5    model escrow statute, which all of the relevant states have adopted).  The NPM base rate varies

6    from year to year but is set forth in the model escrow statute.

7        3.    However, the inflation adjustment rate is an unknown during the year in

8    which the sales are generated.  Price Waterhouse Coopers ("PWC") is the independent auditor

9    for the MSA.  PWC sets the inflation adjustment in approximately March or early April each

10   year for the previous sales year.  Throughout the sales year, parties can only speculate as to what

11   the inflation adjustment rate will ultimately be because PWC does not determine the actual

12   inflation adjustment rate until months after that calendar year is over.

13       4.    The product of the NPM base rate and the inflation adjustment rate equals

14   the accrual rate that CTC uses to calculate the escrow deposits due for a given sales year (the

15   "NPM Fee Rate").  When the Plan was formulated, including the projections attached to the Plan

16   as Exhibit 3, CTC had to estimate what the inflation adjustment rate would be to calculate the

17   NPM Fee Rate for escrow deposits.

18       5.    At the time the Plan was formulated and confirmed, the inflation

19   adjustment rate had not yet been set by PWC for the 2005 sales year.  Ultimately, PWC, post-

20   confirmation, determined that the actual 2005 inflation adjustment rate was 1.2425497.  Thus,

21   the NPM base rate for the 2005 sales year was $0.0167539 per cigarette.  The product of the two

22   is $0.02081755 per cigarette.  While CTC had estimated that the NPM Fee Rate per cigarette

23   sold was going to be $0.0212 for the sales year 2005 the actual rate was $0.02081755, a lower

24   NPM Fee Rate per cigarette than CTC had projected in Exhibit 3.

25       6.    Historically, CTC has not had to segregate amounts monthly for escrow

26   deposits to be made in the following year.  However, CTC has had to make quarterly escrow

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    deposits to fifteen states that require deposits be made quarterly in a given sales year.  With the

2    quarterly states, and depending on the state at issue, escrow deposits and certifications are due

3    between fifteen days after the end of the quarter to forty-five days after the end of the quarter.

4    CTC sends a letter to each quarterly state requesting that that quarterly state provide the total

5    number of CTC cigarettes reported as sold during the previous quarter.  "Sales" are typically the

6    number of cigarettes that have been stamped with the state's tax stamp for sale in that state.  This

7    information comes from distributor's and stamping agent's reports to the states regarding the

8    total number of tax stamps applied to cigarette packs during a quarter.  Responses from the

9    quarterly states are varied.  Some states provide the information, while often times others do not

10    have complete information by the time the escrow deposits are due for that quarter.  In those

11    cases, CTC makes a best determination for that state's quarterly escrow deposit.  Once the

12    quarterly state has the final figure, it will inform CTC of the total number of cigarettes and

13    whether or not CTC over or under deposited for the quarter.  Under deposits are made up

14    promptly after notification from the state, and over deposits are applied to the next quarterly

15    deposit.

16          7.    The majority of the fifteen states that require quarterly deposits have

17    compliance certification forms that CTC completes whenever a quarterly escrow deposit is due.

18    Forms and procedures are not standardized state by state, though some states may use a similar

19    form.  The compliance form used by some states listed an estimated $0.02144 rate for 2006 sales

20    on their compliance forms as early as April 2006.  CTC used this rate to calculate its quarterly

21    escrow deposits for all states, except as set forth below in paragraph 8, for the states of California

22    (for first quarter) and Washington.

23          8.    California's compliance form simply states that the escrow deposit must

24    be adjusted for inflation, but does not specifically list a figure to use for inflation.  California

25    confirmed that it would use the estimated $0.02144 rate for its quarterly 2006 escrow deposits in

26    a letter dated August 24, 2006, in which it requested that CTC deposit an additional

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   approximately $5,000 for the inflation adjustment for the first quarter.  CTC complied with that

2   request.  Washington does not require quarterly escrow deposits to reflect an inflation adjustment

3   and instead expects that the inflation adjustment be deposited with CTC's escrow deposits in

4   April of 2007.

5           9.    From CTC's experience in dealing with the quarterly states, many

6   quarterly states seem to view the quarterly escrow deposits as a good faith effort to comply with

7   the law.   Sales figures are often inaccurate or incomplete, on either the state or the

8   manufacturer's side.  Many states realize this and are amenable to the manufacturer making up

9   the difference after the quarterly deposits have been made or even in the following April 15

10  deposit.

11          10.    Given that CTC has never segregated monthly deposits for the states that

12  require payment only after the sale year at issue prior to being required to do so during the

13  bankruptcy, CTC used the NPM base rate for 2005 and 2006 of  $0.0167539 per cigarette and

14  the NPM Fee Rate of  $0.02081755 (based on the 2005 Inflation Adjustment Rate).   In

15  approximately September 2006, CTC hired Edward Hostman, Inc. to carry out financial

16  analyses.  Based upon EHI's work, CTC adjusted the accrual rate for its monthly deposits into

17  the segregated accounts to $0.02144.  This rate, which is the rate given to CTC by the quarterly

18  states as referenced above.

19         I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE

20  BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE

21  FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY OF PERJURY.

22        Dated: January 5, 2007.

23

24         /s/  Jennifer Li

25         Jennifer Li

26

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2007, I served a true copy of the foregoing  CAROLINA TOBACCO COMPANY'S RESPONSE TO EMERGENCY MOTION OF SETTLING STATES TO ENFORCE DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION DATED  OCTOBER 18, 2005 (AS MODIFIED FEBRUARY 24, 2006), the DECLARATION OF JENNIFER LI IN SUPPORT OF CAROLINA TOBACCO COMPANY'S RESPONSE TO EMERGENCY MOTION OF SETTLING STATES TO ENFORCE DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION DATED OCTOBER 18, 2005 (AS MODIFIED FEBRUARY 24, 2006) on the following individuals by electronic notification through ECF or mailing a true copy thereof to the individuals at the addresses listed below by first class mail, deposited with the U.S. Post Office, Portland, Oregon:

| | |
|---|---|
| Vivienne Popperl<br>United States Trustee<br>620 SW Main St., Suite 213<br>Portland, OR  97205<br>**Electronic Notification** | Carolina Tobacco Company<br>David Redmond<br>5620 SW Dover Lane<br>Portland, OR  97225<br>**First Class Mail** |
| Samuel R. Maizel<br>Pachulski Stang Ziehl Young Jones &<br>Weintraub<br>10100 Santa Monica Boulevard<br>11th Floor<br>Los Angeles, CA 90067-4100<br>**First Class Mail**<br>    Attorneys for Defendants | Pamela Singer<br>Pachulski Stang Ziehl Young Jones &<br>Weintraub<br>150 California Street, 15th Floor<br>San Francisco, CA 94111-4500<br>**Electronic Notification**<br>    Attorneys for Defendants |
| Missouri Dept. of Revenue<br>Bankruptcy Unit<br>Attn:  James R. Morris<br>PO Box 475<br>Jefferson City, MO  65105-0475<br>**First Class Mail** | Wayne Stenehjem<br>North Dakota Attorney General<br>600 E. Boulevard Avenue<br>Bismarck, ND  58505<br>**First Class Mail** |
| David Criswell<br>Brad T. Summers<br>Ball Janik LLP<br>101 SW Main Street, Suite 1100<br>Portland, OR  97204-3219<br>**Electronic Notification**<br>    Attorney for House of Prince | Jonathan M. Weis<br>Levin Ginsburg<br>180 N. LaSalle St., Suite 3200<br>Chicago, IL  60601-2800<br>**First Class Mail**<br>    Attorney for House of Prince |
| Karen Cordry<br>National Assn. of Attorneys General<br>2030 M St., NW, 8th Floor,<br>Washington, DC 20036<br>**First Class Mail** | Susan Walker<br>Ohio Attorney General's Office<br>30 E. Broad Street, 16th Floor<br>Columbus, OH  43125<br>**First Class Mail** |

H:\Client\Ctc\71525\COS-Resp to em mo.doc

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   Paul Dodds                          The State of Idaho
    Brownstein Rask                     Brett DeLange, Esq.
2   1200 SW Main Street                 Office of the Attorney General
    Portland, OR  97205                 PO Box 83720
3   **First Class Mail**                Boise, ID  83720
                                        **First Class Mail**
4
    Kelley Blaine                       John S. Dalporto
5   Special Assistant US Attorney       Senior Assistant Attorney General
    620 SW Main Street, Suite 312       West Virginia State Tax Dept.
6   Portland, OR  97205                 State Capitol Complex
    **Electronic Notification**         Building 1, Room W-435
7                                       Charleston, WV  25305
                                        **First Class Mail**
8
            Dated: January 5, 2007.
9
                            FARLEIGH WITT
10

11
                            By:  /s/ Tara J. Schleicher
12                              Tara J. Schleicher, OSB #95402
                                Peter C. McKittrick, OSB #85281
13                              Of Attorneys for Carolina Tobacco Company

14

15

16

17

18

19

20

21

22

23

24

25

26

*FARLEIGH WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741