U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

**F I L E D**

August 30, 2007

Clerk, U.S. Bankruptcy Court

**Below is an Opinion of the Court.**

_____
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | Bankruptcy Case |
| ) | No. 05-34156-elp11 |
| CAROLINA TOBACCO COMPANY, ) | |
| ) | MEMORANDUM OPINION RE OBJECTION |
| Debtor. ) | TO CLAIM OF CPI NV |
| ) | |

    In 2005, debtor Carolina Tobacco Company (CTC) filed a petition under chapter 11 of the Bankruptcy Code.[1]  In its schedules filed in this case, CTC listed a claim by CPI NV in the amount of $534,765.73.  A number of states that are creditors in this case object to this claim, arguing that it is not a debt of debtor CTC, but instead is an obligation of Tideline International Company (Tideline), an affiliated company of debtor.  Because there is no credible evidence to prove that the claim is a debt of CTC, I conclude that the objection is well taken, and will disallow the claim.

---

[1] 11 U.S.C. § 101 et seq.

Page 1 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

FACTS

CPI NV is a Belgian company that engages in the international trading of goods. Its managing director is Axel Caudron. In the early 1990s, Caudron met David Redmond, who owned Tideline. Caudron on behalf of CPI NV and Redmond on behalf of Tideline engaged in extensive international trading through the 1990s, including trading of tobacco products. These trades could involve millions of dollars worth of goods and were done primarily over the telephone. Such trades were rarely if ever supported by any written documentation between the two firms. The two orally agreed to share profits fifty-fifty.

In the late 1990s, Redmond approached Caudron with the idea of creating a generic, private label cigarette for the United States market. The goal was to produce a cigarette that tasted like the United States version of Marlboro cigarettes. This cigarette later became known as the Roger brand.

Redmond wanted Caudron to use his contacts in the international tobacco trading business to help locate a manufacturer for the new label cigarette and to assist in the product's development. Caudron agreed to work on the project. He made contacts with cigarette manufacturers around the world, looking for a manufacturer that could produce the quality of product that Redmond and Tideline wanted. Eventually, Caudron introduced Redmond to House of Prince, which had manufacturing facilities in Latvia. House of Prince was able to work with Tideline to create the taste that Redmond wanted and to provide manufacturing facilities for the cigarettes.

Caudron also provided certain other services related to the Roger

Page 2 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

brand, including taste testing and focus groups.  Caudron and Redmond did not discuss compensation for those services until after they were provided.  Redmond sought to make Caudron a fifty-fifty partner in the brand; Caudron did not want a partnership and instead sought compensation for his services.

In the meantime, the two men continued to engage in trading transactions on behalf of CPI NV and Tideline.

During the time that Redmond and Caudron were working to create and market the Roger brand cigarette, Redmond formed CTC to manufacture and market the new brand.  CTC was incorporated in 1999.  Tideline owns the Roger brand, but CTC has an exclusive license for the brand, which it now manufactures[2] and markets.

When CTC filed its chapter 11 petition in 2005, CTC scheduled a debt of $534,765.73 owing to CPI NV.  The nature of the claim was described in the schedules as "Ten-year note payable due to over distribution of profits from previous years." Exh. 1 at 2.  In response to discovery requests made by the states, debtor and CPI NV both provided two different documents as supporting documentation for the claim.  One was an invoice dated February 1, 2001, purportedly from CPI NV to CTC/Tideline, for $575,228.45.  That invoice said it was for:

> Payment concerning CPI NV's commission and finder's fees for world-wide factory search resulting in producing the ROGER® brand cigarettes for Carolina Tobacco Company for the North American Market (via House of Prince Riga); Management and staff feasibility for American tobacco blend with USA Marlboro-like taste; location of tobacco buyers and blenders to nearly duplicate Marlboro USA taste (via House of Prince Riga, Latvia).

---

[2] By the time CTC filed bankruptcy, CTC had begun to manufacture the Roger cigarettes itself.

Page 3 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

Period of October 1997 to January 1999.

Exh. 7.

The other document was an internal Tideline document dated February 5, 2004 and signed by Redmond, which said:

> RE: Payment to CPI NV for incorrect division of profits - Previous Years
>
> As we have discussed and agreed upon, Tideline International Company owes CPI NV exactly EURO 331.729 for previous years (<u>sic</u>) business transactions.
>
> Therefore, this letter is to confirm the agreement by and between Tideline International Company ("Tideline") and CPI NV as follows:
>
> 1. As of September 30, 2003 the outstanding balance owed by Tideline to CPI NV is EUR (<u>sic</u>) 331.729,
>
> 2. This amount will be paid by Tideline over the next 10 years at a rate of about EURO 33.000 per year starting in year 2004, and agrees to make the year 2004 payment on or before September 15, 2004.
>
> 3. This letter confirms that payment from Tideline shall be completed in 10 years with the first (1st) payment in 2004 and the last payment in 2013 for the balance owed (e.g. about Euro 33,172,90 (<u>sic</u>))
>
> 4. Funds for the year 2004 payment are to be wired to CPI NV account at KBC Bank [account number].

Exh. 8. This document came to be referred to as "the promissory note."

Later, in April 2007, another document labeled "invoice" appeared in response to a subpoena on Tideline's accountant. That invoice, which was in the same form as the 2001 invoice, was directed to Tideline. It was dated February 1, 2004, for $575,228.45, and said that it was for:

> Settlement for Imperial Tobacco Company (Regal® and Superking® brands) business, and
>
> Settlement for outstanding balances regarding Marlboro and RJR business in the USA (jointly with CPI USA), and
>
> First Payment concerning CPI NV's commission and finder's fees for

Page 4 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

1    producing the ROGER® brand for the North American Market (via House
     of Prince Riga).

Exh. 31 at 5, 18.

The obligation to CPI NV was carried on Tideline's books until it was transferred to CTC's books in March, 2005, shortly before debtor filed its chapter 11 petition. Although Redmond testified that he had tried to get his Chief Financial Officer (CFO) to transfer the obligation earlier, because he considered the debt to be related to the Roger brand cigarettes and thus the obligation of CTC, his CFO Kevin Richeson testified that he was not asked to transfer the debt from Tideline to CTC until he received an email communication from Redmond on March 14, 2005.

The explanation for the obligation changed during the course of this case. In June 2006, Caudron on behalf of CPI NV signed a one-page declaration saying that CPI NV issued the 2001 invoice to Tideline/CTC for a commission and finder's fee. Exh. 37 at 8.[3] The 2001 invoice was attached to that declaration. In September 2006, Caudron signed a response to the states' discovery requests, under penalty of perjury, that the parties had agreed in January 2001 that CPI NV would be paid $575,228.45 for its services. He attached the 2001 invoice to his response, and swore that the invoice was a true and accurate copy of an invoice sent to CTC and Tideline by CPI NV. Caudron explained that the amount of the obligation was based on an amount per shipping case of cigarettes. He also explained that the difference in the amount of the

---

[3] The copy of the declaration contained in Exh. 37 is not signed. The copy of the same declaration filed with the court on June 12, 2006, contains an electronic signature.

Page 5 -   MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

obligation appearing in the 2001 invoice, $575,228.45, and the amount showing in the 2004 promissory note, EURO 331,729, was simply the $575,228.45 with an interest component removed.

At his September 25, 2006 deposition, Caudron testified that he and Redmond never had a specific agreement about how much CPI NV would be paid for its services with relation to the Roger cigarette brand. He said they probably negotiated the amount in 2000 or 2001. In late 2003 or early 2004, CPI NV's auditors wanted some documentation for a debt of Tideline that was being carried on CPI NV's books, so Caudron asked Redmond to sign something to provide that documentation.

The document that Redmond signed is the promissory note dated February 5, 2004, which shows that Tideline owes CPI NV EURO 331,729 "for incorrect division of profits." Exh. 8. It also indicates that Tideline will pay the debt over 10 years at a rate of EURO 33,000 per year.

In October 2006, CPI NV filed an Amended Response to the states' discovery requests. That amended response, again signed by Caudron under penalty of perjury, continued to swear that the parties had agreed to the $575,228.45 figure in January 2001, that the amount was based on an amount per shipping case plus an interest component, and that the parties had agreed in January 2004 to a 10-year payment plan. CPI NV continued to rely on the 2001 invoice to show that CTC was obligated on the debt.

At his May 30, 2007 deposition, less than three weeks before the trial on this claim objection, Caudron for the first time repudiated the February 2001 invoice. He testified that it could not have been created or sent by CPI NV, because Belgian law requires certain information to be on an invoice, and this invoice did not contain that information. He

Page 6 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

also testified that the February 1, 2004 invoice purportedly from CPI NV to Tideline, reflecting a total of $575,228.45 for three separate items (Exh. 31 at 18), was not prepared or sent by CPI NV.

Caudron testified that an email dated October 16, 2003, from CPI NV's accountant to Redmond, advising him that there was an outstanding balance of $575,228.45[4] that Tideline owed to CPI NV, triggered his memory of how the $575,228.45 amount was determined.

According to this version of events, Caudron and Redmond had never settled on an amount that should be paid for CPI NV's services in relation to the Roger brand, but had discussed that it should be somewhere around $500,000. Then, in late 2003, CPI NV's accountant reported that CPI NV's books showed that Tideline owed CPI NV $575,228.45 on trading obligations. After further investigation, it was determined that Tideline had paid all of its trading obligations, but that, due to changes in currency exchange rates and the fact that accounting in Belgium was required to be reported in Euros but payments on tobacco products were made in US dollars, there was an exchange rate difference of $575,228.45 for the trading business that Tideline had engaged in with CPI NV. Rather than write off this amount on its books, Caudron and Redmond agreed that Redmond would pay an amount equal to the exchange rate difference and, in exchange, CPI NV would forgo any other

---

[4] Tideline produced two versions of this email during discovery. The first shows the email message from the accountant to Redmond, stating an outstanding balance of $175,228.45. Exh. 26 at 68. The second is a copy of that same message forwarded by Redmond to a different Tideline email address. The message is identical to the first, except that the amount of the outstanding balance was $575,228.45 instead of $175,228.45. Exh. 26 at 69. No witness had an explanation for the discrepancy.

Page 7 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

compensation for services with respect to the Roger brand cigarettes.

Caudron also testified in his deposition that, over the next few weeks after the accountant had found the $575,228.45 problem on CPI NV's books, the accountant did some recalculations and reduced the amount of the exchange rate difference to EURO 330,729. However, because Caudron and Redmond had already agreed to the $575,228.45 figure as compensation for the services provided for the Roger brand, CPI NV did not reduce the amount due to the EURO 330,729.

Redmond asked for payment terms, and Caudron agreed that he could pay over 10 years. According to Caudron, the auditors wanted documentation of the EURO 330,729 debt, so he asked Redmond to create a document to reflect that amount. That document is the February 2004 promissory note that is Exh. 8. According to Caudron, although the note says Tideline owes EURO 330,729, payable at EURO 33,000 per year for 10 years, the actual debt is $575,228.45.

Two days after the May 30 deposition, CPI NV submitted a Second Amended Response to the states' discovery requests. In that response, Caudron continued to state, under penalty of perjury, that the amount due for services provided with regard to the Roger brand was agreed to in January 2001, even though two days before he had testified that the agreement did not occur until this accounting issue arose in late 2003. He also continued to represent that the difference between the approximately $575,000 and the approximately EURO 330,000 was an interest component. His deposition testimony had explained that discrepancy differently. The discovery response also continued to admit under penalty of perjury that the 2001 invoice was sent to CTC and Tideline by

Page 8 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

CPI NV, even though Caudron had just testified two days earlier that the invoice could not have been prepared by CPI NV.

At trial, Caudron's testimony tracked his May 2007 deposition testimony, with regard to the timing of the determination of the debt and the basis for it. He testified that he thought that CTC owes the debt along with Tideline, because CTC, which manufactures and markets the Roger brand, got the benefit of CPI NV's services in finding a manufacturer and developing and marketing the product.

The employees of Redmond, Tideline, and CTC who were responsible for accounting testified at trial that they had not seen any of the three documents (the 2001 invoice, the 2004 promissory note, and the 2004 invoice) that CTC and CPI NV were using in this proceeding to support the CPI NV claim.

Tideline made the 2004, 2005, and 2006 annual payments on the obligation to CPI NV.

## ISSUE

Whether CPI NV has proved its claim against CTC.

## DISCUSSION

Bankruptcy Rule 3001(f) provides that a properly filed proof of claim is "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The burden is on "the objecting party to present evidence to overcome the *prima facie* case." In re Murgillo, 176 B.R. 524, 529 (9th Cir. BAP 1995). If the objecting party presents sufficient evidence to rebut the presumption of the validity of the claim, the ultimate burden of proof on the claim falls on whatever party would bear that burden outside bankruptcy; here, on the claimant.

Page 9 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

Raleigh v. Illinois Dept. of Rev., 530 U.S. 15, 21 (2000)(burden of proof remains where substantive law puts it); In re Garner, 246 B.R. 617, 622 (9th Cir. BAP 2000). Where, as here, the claimant does not file a proof of claim, but the claim is instead scheduled by the debtor as not disputed, contingent, or unliquidated, the claim is deemed filed, 11 U.S.C. § 1111(a), and under Bankruptcy Rule 3003 "is accorded the same evidentiary effect as is one that is actually filed by the creditor." 9 Lawrence P. King, Collier on Bankruptcy ¶ 3003.02[1] (15th ed. Rev. 2003)(footnote omitted).

The states make two legal arguments and one factual argument for disallowing this claim: that it is unenforceable because it violates the statute of frauds, that it should be disallowed because of false statements made in support of the claim, and that CPI NV has not proved its claim. I conclude that the states should prevail based on the last of the three arguments.

As I explain below, the states presented sufficient evidence to overcome the *prima facie* validity of the claim, including but not limited to false testimony and documentation and a myriad of changing stories presented by both CTC and CPI NV in support of the claim. CPI NV has not provided believable evidence from which I could find that the claim is one belonging to CTC, as opposed to Tideline.

First, the basis for the claim and the explanation for the amount have changed numerous times over the course of this case. Given the testimony under oath that the claim was based on an incorrect division of profits, which would relate to profits shared between CPI NV and Tideline, and belated sworn testimony that it related to services

provided for the Roger brand for the benefit of CTC and Tideline, as well as the other versions of the basis for the debt that emerged over the life of this case, it is impossible to tell which sworn version of the facts is the true version.

Second, there is no credible documentary evidence that this debt is owed by CTC rather than Tideline. The only written documentation in existence, other than documentation that has been shown to be fabricated, is the February 2004 promissory note, which refers to the obligation as belonging to Tideline. Although there was testimony that the services provided benefitted the Roger brand and therefore benefitted both CTC and Tideline, the fact of the matter is that the services were begun before CTC existed, and no one ever made an effort to transfer the obligation to CTC after its incorporation, until very shortly before this bankruptcy case was filed, or to allocate the cost of services provided for the benefit of CTC as opposed to Tideline. Tideline owns the Roger brand; CTC has a license to manufacture and market the brand. Thus, Tideline as well as CTC gained a benefit from the services related to the brand. That would help explain why Tideline has made the three annual payments on the obligation.

Third, even the documentation that was presented, other than the fabricated 2001 invoice, shows that at least a portion of the debt is for transactions engaged in by Tideline, not by CTC. The 2004 promissory note says that the debt is for incorrect division of profits "for previous years (sic) business transactions." Exh. 8. The 2004 invoice, which was also fabricated, reflects that the debt is for three items, only one of which relates to the Roger brand. Thus, even the document

apparently fabricated by Redmond, Tideline, or CTC to reflect the debt shows that the debt is only partially related to the Roger brand. There was no evidence that CTC would have received a benefit from any of the other services for which the debt was purported to arise. If the debt was only partially for the benefit of CTC, no one has attempted to allocate that debt between Tideline and CTC, but instead has tried to assign the entire obligation to CTC.

At bottom, it is clear that Caudron on behalf of CPI NV is willing to swear under oath to false statements. Caudron's explanation was that he was careless in the earlier discovery responses and did not read them carefully.[5] This explanation is not believable, particularly in light of the June 2006, single-page declaration that he signed, under penalty of perjury, which stated that the debt was based on the attached 2001 invoice. In light of his later testimony that it was readily apparent from looking at the form of the invoice that it was not an invoice issued by CPI NV, it is clear that his false sworn statement was not a result of a mere lack of care. It was a result of a complete disregard for the truth of statements given under oath in support of a claim he was asserting in this bankruptcy case. At best it was a reckless disregard for the truth. At worst it was intentional deception in connection with CPI NV's pursuit of its claim in this bankruptcy case.

CPI NV attempts to meet its burden of proof in part through Mr.

---

[5] I agree with the states that it appears CTC was preparing the discovery responses for CPI NV, which contained clear untruths. As reprehensible as that conduct is, it is still CPI NV that must prove the claim, and that must provide truthful responses to discovery requests.

Page 12 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

Redmond's testimony. To the extent Redmond's testimony corroborates testimony given by Caudron at trial, I find that corroboration without value, as Redmond's version of the facts changed at least as many times as did Caudron's. Further, Redmond had sudden "recollections" of details consistent with Caudron's testimony that occurred only after hearing Caudron's testimony. Those sudden "recollections" were simply not believable.

This is a classic case of failure of proof based on a complete and utter lack of credibility. Throughout the course of this case, the states have questioned this claim, seeking documentary or other evidence that this is a debt owed by CTC rather than by Tideline. The only written documentation that the debt belongs to CTC is a 2001 invoice, which was presented by CTC in support of CPI NV's claim in this bankruptcy case and relied on by CPI NV in support of its claim. Now everyone, including Redmond, admits that the 2001 invoice is not a legitimate document. Caudron testified that the invoice could not have been created by CPI NV because of the form it was in. It is also clear that the amount stated in the invoice had not yet been agreed upon in 2001. In short, this invoice was a complete fabrication. Yet Caudron continued to rely on it in support of CPI NV's claim as late as June 1, 2007.

There is no meaningful explanation for the 2001 "invoice." At the trial, Redmond testified that the invoice must have been created by his now-ex-wife. However, that testimony is not credible in light of the numerous false statements by Redmond and the absence of the former Mrs. Redmond to verify that testimony. Nor was there any attempt to explain

Page 13 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

why, up to practically the eve of trial, CPI NV and CTC continued to assert that the 2001 invoice was valid and used it as documentary evidence of the claim in this bankruptcy case, when it was clear from the form of the invoice that it was a total fabrication.

While there is not much that is clear in this case, what is clear is that CTC and CPI NV were willing to rely on false, fabricated documents to support this claim and to swear to multiple false versions of events. It was only after counsel for the states doggedly pursued extensive discovery that uncovered falsehoods and inconsistencies, that Caudron and Redmond admitted that the 2001 invoice was fabricated.

It is also clear that there was no agreement in 2001 as to the amount owed to CPI NV, as represented throughout most of the course of this claim litigation. Instead, any agreement about amount was made in 2003 or 2004. Further, there was no evidence that the parties ever made an agreement that CTC rather than Tideline would be liable for this debt.[6] The dealings between the Redmond and CPI NV had been on behalf of Tideline, and CPI NV treated the debt as owed by Tideline. Tideline made the annual payments in 2004, 2005, and 2006.

There is just no way to know which version of the facts is true. This is the essence of a failure of proof. This claim fails because of an utter lack of credible evidence establishing the basis for the claim

---

[6] Before Redmond had the debt transferred from the books of Tideline to the books of CTC in March 2005, Redmond contacted Caudron to see if there would be an adverse impact on CPI NV if the books of CPI NV showed that the debt was owed by Tideline, but CTC's books showed that it was CTC's debt. Caudron had no objection to Tideline's transfer of the debt from Tideline's books to CTC's books.

Page 14 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV

or that the claim belongs to CTC.

Because I conclude that CPI NV has failed to prove that it has a claim against CTC, I need not consider whether the obligation violates the statute of frauds, or whether I should disallow the claim as a sanction for CPI NV's repeated false statements in connection with the claim.[7]

CONCLUSION

Based on the lack of proof of the claim, the claim will be disallowed. Counsel for the states should submit an order disallowing the claim.

###

cc: Karen Cordry
 Robert Carlton
 Tara Schleicher

---

[7] One of the requirements for imposing sanctions under my inherent authority is that I must consider the adequacy of less drastic sanctions. <u>Anheuser-Busch, Inc. v. Natural Beverage Distributors</u>, 69 F.3d 337, 353 (9th Cir. 1995). Because CPI NV's false sworn statements, either during discovery or at the hearing on the objection to the claim, lead me to conclude that CPI NV has not proved its claim and therefore the claim will be disallowed, a sanction of disallowance for those false statements would be redundant.

Page 15 - MEMORANDUM OPINION RE OBJECTION TO CLAIM OF CPI NV